UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

CHIN YONG KIM, JONG MIN CHOI, MI AE CHOI
and SANG SOON KIM,

                 Plaintiffs,

               -against-

GLORIA NAPOLITANO,

                 Defendant.

------------------------------------------------------------------------X

: **MEMORANDUM and ORDER**

: 16 CV 9516 (KNF)

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

In this negligence action, plaintiffs Chin Yong Kim ("Kim"), Jong Min Choi ("Choi"),

Mi Ae Choi ("Ae Choi") and Sang Soon Kim ("Soon Kim") allege that they sustained injuries

when Kim's 2001 Toyota vehicle came into contact with defendant Gloria Napolitano's

("Napolitano") 2008 Toyota vehicle. The defendant has moved for summary judgment, pursuant

to Federal Rule of Civil Procedure 56, seeking dismissal of the plaintiffs' non-economic loss

claims on the ground that insufficient evidence exists to give rise to a genuine issue of material

fact respecting whether each plaintiff suffered a "serious injury," as that term is defined by New

York Insurance Law § 5102(d), a provision of New York's "no-fault insurance law." The

plaintiffs oppose the motion.

*I.    Factual Background*

On January 19, 2014, at about 9:50 p.m., a motor vehicle owned and operated by

Napolitano came into contact with a motor vehicle owned and operated by Kim. This occurred

on Interstate 95 near its intersection with Jerome Avenue in Bronx County, New York. In the

1

vehicle Kim was driving were plaintiffs Choi, Ae Choi and Soon Kim, as well as two non-parties (Bong Noh Lee and Eun Ja Lee). Kim and his passengers were traveling from Maryland to New York to visit Kim's daughter. Kim testified at deposition that the accident occurred "probably" ten minutes after his vehicle passed the George Washington Bridge. Kim and Napolitano exchanged drivers' licenses and insurance and vehicle registration information. They waited for the police for 90 minutes and left the scene of the automobile accident when the police failed to arrive.

### *Kim*

Kim was deposed by the defendant on October 26, 2017. Kim testified that, as a result of the accident, he had contact with the inside of his vehicle, specifically, his left shoulder hit the left window and his lower back was pushed into his seat. After the vehicles came into contact, Kim drove to a motel and went to sleep. He did not seek medical attention on the day of the accident. On the following day, he drove himself and his passengers around Manhattan for the purpose of sightseeing and then returned to Maryland.

Kim first sought medical attention from Sang Youl Yom, D.C. ("Dr. Yom"), a physical therapist, in Maryland, about one week after the automobile accident. Kim complained of lower back and left shoulder pain. He was examined by Dr. Yom and was given a course of therapy. Kim attended physical therapy sessions at least twice each week, until September 2014. Kim drove himself back and forth to his physical therapy sessions.

Kim began to treat with the New York Pain Clinic ("NYPC") in Queens, New York, about two months afer the automobile accident. He went to the clinic once weekly for a total of four times. At NYPC, Kim made the same complaint he had made previously, namely, lower

2

back and shoulder pain. He received massages at NYPC in response to his complaint of pain.

Kim was referred by NYPC to Kissena Medical Imaging, P.C., in Queens, New York, for magnetic resonance imaging ("MRI"). Kim had an MRI of his left shoulder on April 28, 2014, and an MRI of his lumbar spine on May 7, 2014. The MRI of his left shoulder revealed "joint effusion possibly due to trauma [and] focal intrasubstance tear involving the subscapularis tendon." The MRI of Kim's lumbar spine revealed "reversal of the lumbar lordosis possibly due to muscular spasm[,] central herniated discs at the L4-5 and L5-S1 levels [and] ventral bulging at L3-4, L4-5 and L5-S1 levels."

Kim testified that he recalled seeing Dr. Yan Q. Sun ("Dr. Sun"), an orthopedist, "probably once." According to Kim, he saw no other doctors in New York or Maryland and did not discuss the automobile accident or his pain or injuries with his regular medical doctor. Kim testified that he was never told that he would need surgery, a bone graft or a discectomy. Kim thought surgery for his left shoulder might have been recommended, but he did not remember by whom. No surgery was performed on Kim as a result of the automobile accident and he was not prescribed any medications or given any medical devices to assist him. Kim maintained that he never had any treatment to his back, neck or left shoulder at any time before the automobile accident. According to Kim, prior to the January 19, 2014 automobile accident, he used to play golf, but cannot play golf as well now.

### Kim's Employment

At the time of the automobile accident, Kim was employed installing hardwood floors and missed one week of work as a result of the accident. Kim testified that he also worked approximately ten hours per week at a restaurant owned by his wife, Soon Kim. He washed

3

dishes and shopped for the restaurant. Kim recalls that he missed about one week from his restaurant job; however, at the time of his deposition he was back to work at both positions.

Kim was asked, during his deposition, whether he was unable to do anything now that he used to do before the automobile accident. He stated there was nothing he could not do at all; however, Kim noted that he cannot lift heavy things because of the left shoulder pain he experiences. In addition, Kim stated that he has a hard time doing garden work.

### Choi

Choi was deposed on October 30, 2017. Choi testified that he lives in Maryland with his wife Ae Choi. Choi also testified that, with respect to the automobile accident, at impact, he stretched his hand(s) forward and touched something in the front interior of the vehicle. He recalled that on the day after the automobile accident, everyone went sightseeing and then drove back to Maryland. Choi contends that none of the passengers in Kim's vehicle on January 19, 2014, sought medical attention while in New York.

Choi first sought medical attention about one week after the automobile accident. According to Choi, he had a primary care physician, Dr. Daniel Kim, with whom he treated every three months; however, Choi did not discuss his injuries from the January 19, 2014 automobile accident with Dr. Kim. Instead, he was referred to Dr. Yom by Kim. Choi complained to Dr. Yom about pain in his left shoulder, neck and lower back. Choi treated with Dr. Yom twice per week for almost two months. Choi then began to treat with doctors in New York to whom he was referred by Dr. Yom. Dr. Yom told Choi that he needed to treat with doctors in New York to get money for the automobile accident. After Dr. Yom told Choi that he needed to treat with doctors in New York to get money for the accident, Choi discontinued his treatment in Maryland.

4

According to Choi, the next place he went for treatment was NYPC. Choi stated that he and Ae Choi made the round trip to New York on four or five occasions to visit NYPC. Choi complained of pain in his left shoulder and neck at NYPC. Choi recalled that he received one hour of physical therapy during each NYPC visit. At the time of his deposition, Choi testified that he has no numbness, pain, swelling, or tingling in his left shoulder, has no range of motion problems in his neck and no neck pain. Choi testified that his golf game has suffered due to the January 19, 2014 automobile accident.

Choi saw a Queens neurologist for a test on one occasion; he testified it was "no big matter[]." Choi also saw an orthopedist in New York, whose name he did not recall. The orthopedist did not recommend surgery and never told Choi that he would need: (i) surgery to his spine; (ii) a bone graft to his spine; (iii) to have discs removed from his spine; or (iv) to have his vertebrae fused. The orthopedist never discussed any non-surgical treatment with Choi and never told Choi to have physical therapy. Choi maintains that he was not prescribed any medications or given any medical devices to assist him.

Choi was referred by NYPC to Kissena Medical Imaging, P.C. for MRIs. Choi had an MRI of his left shoulder on April 7, 2014, and an MRI of his cervical spine on April 14, 2014. The MRI of Choi's left shoulder revealed "joint effusion possibly due to trauma [and] tendinitis of the biceps tendon [and] focal tear involving the subscapularis tendon." The MRI of his lumbar spine revealed "reversal of the cervical lordosis possibly due to muscular spasm[,] central herniated disc at the C5-6 level [and] ventral bulging at the C4-5 level anteriorly."

### Choi's Employment

Choi had his own construction business at the time of the January 19, 2014 automobile

5

accident. Choi testified that he missed one month "more or less" from work due to the accident. According to Choi, he can no longer carry anything that weighs more than 20 or 30 pounds and is not able to lift or throw small hand tools above his head.

*Ae Choi*

Ae Choi was deposed on December 27, 2017. Ae Choi testified that, at impact, her left elbow and perhaps her left hand hit the seat in front of her. She did not seek medical attention on the day of or the day after the automobile accident. She first sought medical attention from Kyung Herbal Oriental Medicine and from Dr. Yom, after returning to Maryland. Although Ae Choi had a primary care physician at the time of the automobile accident, she did not discuss her injuries with him. Ae Choi recalls that she treated with Dr. Yom about twice weekly from January to April of 2014. Ae Choi also treated at NYPC, to which she was referred by Dr. Yom. Ae Choi complained of pain in her left elbow and lower back while at NYPC.

NYPC referred Ae Choi to Kissena Medical Imaging, P.C. for MRIs. Ae Choi had an MRI of her left elbow on April 7, 2014, and an MRI of her lumbar spine on April 14, 2014. The MRI of Ae Choi's left elbow revealed "joint effusion possibly due to trauma [and] focal intrasubstance tear involving the biceps ligament." The MRI of her lumbar spine revealed "reversal of the cervical lordosis possibly due to muscular spasm[,] central herniated disc at the C5-6 level [and] ventral bulging at the C4-5 level anteriorly." Ae Choi contends that a doctor, whom she could not identify, told her she needed surgery on her left arm, but she was scared and had to work; so, she did not have the surgery. Ae Choi maintains that she was prescribed neither medication nor medical devices as a result of the January 19, 2014 automobile accident. Ae Choi

6

contends that she experiences an occasional pain in her lower back and left elbow, and standing for an extended period of time is difficult.

### *Ae Choi's Employment*:

In January 2014, Ae Choi was working as a cook at an establishment known as the Korean Korner. She worked six days weekly for six to eight hours per day. Ae Choi recalls that she did not miss any time from work as a result of the automobile accident, but she spent a number of hours obtaining medical treatment. Ae Choi scheduled her medical treatment appointments for Mondays, when she did not work. Ae Choi contends that, since the automobile accident occurred, she has to have help at work lifting heavy things, but otherwise she is able to do everything she did before the accident.

### *Soon Kim*

Soon Kim was deposed on October 26, 2017. According to Soon Kim, the day after the automobile accident and for two or three days thereafter, she stayed in a hotel room and rested. Soon Kim recalled that she left the hotel only to have a meal. Soon Kim testified that while she remained in the hotel, she had neck and lower back pain, which she had not experienced prior to the January 19, 2014 automobile accident. The first time Soon Kim sought medical attention for these ailments was one week after the accident, when she saw Dr. Yom. Soon Kim told Dr. Yom that she had neck and lower back pain. Soon Kim testified that she had been in other motor vehicle accidents and had been treated by Dr. Yom on those occasions.

Soon Kim treated at NYPC once per week for about four weeks. While under the care of NYPC, Soon Kim received physical therapy and saw an orthopedist and a neurologist. NYPC referred Soon Kim to Kissena Medical Imaging, P.C., for MRIs. Soon Kim had an MRI of the

lumbar spine on April 28, 2014, and an MRI of the cervical spine on May 7, 2014. The MRI of her lumbar spine revealed "reversal of the lumbar lordosis possibly due to muscular spasm [and] bulging of annulus fibrosis at the L4-5 level [and] ventral bulging at the L2-3 level anteriorly." The MRI of her cervical spine revealed "reversal of the cervical lordosis possibly due to muscular spasm[,] central herniated disc at the C6-7 level [and] ventral bulging at the C6-7 level anteriorly."

None of Soon Kim's medical providers recommended that she have surgery as a result of the automobile accident. Soon Kim was unable to recall the last occasion on which she sought medical attention as a result of the January 19, 2014 automobile accident. However, she has continued her treatment with Dr. Yom for problems with her left shoulder and has received acupuncture from a "Dr. Kim" in Maryland. According to Soon Kim, she has pain in her lower back once per week or once every two weeks; the pain lasts three days and radiates into the sides of her body and her legs.

### *Soon Kim's Employment*

Soon Kim testified that she owns and manages the Ichiban Restaurant in Maryland. Soon Kim explained that she used to do the cooking at the restaurant but because of her body's condition, she now works as a cashier; this requires her to stand. As a result of the January 19, 2014 automobile accident, Soon Kim missed slightly more than two weeks of work. Soon Kim now works the same number of days as before the accident; however, she could not relate how many hours she works per day.

8

## II.   *The Motion*

### A.   *Defendant's Contentions*

The defendant has moved for summary judgment on the ground that, under New York's no-fault insurance law, none of the plaintiffs has suffered a serious injury, which is a prerequisite to maintaining an action for negligence in the operation of a motor vehicle. In support of her motion the defendant has submitted, in addition to transcripts of the plaintiffs' respective deposition proceedings and copies of their medical records, the affirmations of Dr. Alan J. Zimmerman ("Dr. Zimmerman"), a board certified orthopedic surgeon. Dr. Zimmerman reviewed each plaintiff's treatment records and, on December 13, 2017, conducted his own examination of each plaintiff. Based on his examinations and records review, Dr. Zimmerman found as follows.

As to Kim, Dr. Zimmerman concluded that Kim did not sustain a permanent injury as a result of the January 19, 2014 automobile accident. Dr. Zimmerman was unable to ascertain any objective evidence of orthopedic impairment or disability and his assessment of Kim's lumbar spine and left shoulder led him to conclude that "no clinical support for a focal intrasubstance tear of left rotator cuff nor for a lumbar disc herniation" exists. Dr. Zimmerman was also unable to find evidence of a loss in range of motion. Dr. Zimmerman concluded that Kim's left shoulder and lumbar spine conditions were resolved and that Kim had no neurologically related disability.

As to Choi, based on his examination and records review, Dr. Zimmerman concluded that Choi did not sustain a permanent injury as a result of the January 19, 2014 automobile accident. Dr. Zimmerman was unable to ascertain any objective evidence of orthopedic impairment or

9

disability. Dr. Zimmerman's assessment of Choi's left shoulder and cervical spine led him to conclude that there was "no clinical support for a rotator cuff tear or cervical disc herniation." He was unable to find evidence of a loss in range of motion and concluded that Choi's cervical spine and left shoulder conditions were resolved and that Choi had no neurologically related disability.

As to Ae Choi, Dr. Zimmerman concluded that Ae Choi did not sustain a permanent injury as a result of the January 19, 2014 automobile accident. Dr. Zimmerman was unable to ascertain any objective evidence of orthopedic impairment or disability. Dr. Zimmerman's assessment of Ae Choi's left elbow and lumbar spine led him to conclude that "the MRI report of the focal area of increased signal intensity of the bicep ligament is indicative of degeneration and not of trauma," and that "no clinical support for diagnosis of lumbar disc herniation" exists. In addition, Dr. Zimmerman was unable to find evidence of a loss in range of motion and concluded that Ae Choi's cervical lordosis condition, lumbar spine and left elbow and arm conditions were resolved. He concluded that Ae Choi had no neurologically related disability.

As to Soon Kim, Dr. Zimmerman concluded that Soon Kim did not sustain a permanent injury as a result of the January 19, 2014 automobile accident. Dr. Zimmerman was unable to ascertain any objective evidence of orthopedic impairment or disability. Dr. Zimmerman's assessment of Soon Kim's lumbar spine and cervical spine led him to conclude that her cervical spine and lumbar spine conditions were resolved. In addition, Dr. Zimmerman was unable to find evidence of a loss in range of motion and concluded that Soon Kim had no neurologically related disability.

10

Based on Dr. Zimmerman's findings, the defendant contends that she has met her burden of establishing that summary judgment is warranted. The defendant also points to pertinent deposition testimony of each plaintiff, arguing that the evidence presented at deposition failed to establish any of the requisite elements of a serous injury within the meaning of New York's no-fault insurance law. In this regard, the defendant contends that Kim: (1) admitted in his deposition testimony that he was never told that he would need surgery, a bone graft or a discectomy; (2) did not claim to have suffered any dismemberment or to have become disfigured as a result of the accident, and (3) has not established that he suffered an impairment that prevented him from performing substantially all of the material acts which constituted his usual and customary daily activities for not less than ninety days during the one-hundred-eighty days immediately following the occurrence of the injury or impairment. Rather, the defendant maintains that it appears Kim's injuries only caused him to suffer a slight curtailment of his usual activities, by affecting his ability to lift heavy things and by making it difficult for him to garden and play golf.

Similarly, the defendant contends, Choi: (1) admitted in his deposition testimony that he was never told that he would need surgery to his spine, a bone graft or to have discs removed from his spine or have his vertebrae fused; (2) did not claim to have suffered any dismemberment or become disfigured or sustain any fractures as a result of the automobile accident; and (3) has not established that he suffered an impairment that prevented him from performing substantially all of the material acts which constituted his usual and customary daily activities for not less than ninety days during the one-hundred-eighty days immediately following the occurrence of the injury or impairment. Rather, according to the defendant, it appears that Choi, who was working

11

in construction at the time of the January 19, 2014 automobile accident, missed only one month "more or less" from work and his injuries only caused him to suffer a minimal curtailment of his usual activities, by affecting his ability to carry anything weighing more than 20 or 30 pounds or throw small hand tools above his head, and by making it difficult for him to play golf as well as he did prior to the January 19, 2014 automobile accident.

In like manner, the defendant maintains that Ae Choi, through her deposition testimony, acknowledged that she was prescribed neither medication nor medical devices as a result of the January 19, 2014 automobile accident and did not establish that she suffered an impairment that prevented her from performing substantially all of the material acts which constituted her usual and customary daily activities for not less than ninety days during the one-hundred-eighty days immediately following the occurrence of the injury or impairment. Rather, Ae Choi, who, at the time of the January 19, 2014 automobile accident worked as a cook six days per week, for six to eight hours each day, did not miss any time from work, and although she has to have help lifting heavy things, is otherwise able to do everything she did before the accident and only experiences an occasional pain in her lower back and left elbow and sometimes has difficulty standing.

According to the defendant, therefore, her submissions establish that insufficient evidence exists to give rise to a genuine issue of material fact respecting whether any of the plaintiffs suffered a serious injury within the meaning of New York Insurance Law § 5102(d).

12

## B.    Plaintiffs' Contentions

In support of their opposition to the defendant's motion for summary judgment, each plaintiff has provided his or her own affidavit as well as the submissions of Dr. Sun.[1] Each plaintiff claims that he or she has established having a "serious injury" under two of the "serious injury" categories outlined in New York's no-fault insurance law, namely, (a) permanent consequential limitation of use of a body organ or member; and (b) significant limitation of use of a body function or system.

Regarding Kim, Dr. Sun's submission is based on his own examination of Kim four months after the accident, on May 21, 2014, and subsequently on January 8, 2018, as well as on the results of the MRIs taken in 2014. Upon examination in 2014, Dr. Sun found, in regard to Kim's left shoulder, swelling and tenderness at the anterior aspect of the shoulder joint. The range of motion was restricted. On January 8, 2018, in regard to Kim's left shoulder, Dr. Sun found tenderness at the anterior aspect of the shoulder joint and restricted range of motion. Dr. Sun states that his range of motion examinations were assessed using a goniometer. The MRI taken in 2014, according to Dr. Sun, revealed joint effusion and intrasubstance tear of the subscapularis tendon. He states that the objective medical findings with respect to Kim's left shoulder in 2014 and 2018 were consistent with that which was revealed via the MRI.

---

[1]Although styled as a "Physician's Affidavit," Dr. Sun's writings are unsworn statements made "under penalty of perjury" and, therefore, would properly be before the Court if they were dated. See 28 U.S.C. § 1746 (matters may be proved through written statement which is subscribed under penalty of perjury and dated). In this case, all four of Dr. Sun's submissions are undated. However, based on the nature of the evidence provided in the submissions, the Court is inclined to overlook this omission. Moreover, it is possible to identify the period the submissions were prepared, that is, some time after the plaintiffs' visits to Dr. Sun on January 8, 2018, and before the filing of the instant motion on February 20, 2018.

Regarding the lumbar spine examination in 2014, Dr. Sun found tenderness at the lower back and muscle spasm and restricted range of motion. Dr. Sun opined that, based on his review of the records, the prognosis for Kim was guarded and that the injuries sustained to his left shoulder and lumbar spine were caused solely by the automobile accident of January 19, 2014, and not degenerative disease(s). Dr. Sun opined that Kim will likely have lifelong orthopedic problems and has a permanent partial orthopedic disability.

As a result of his examination of Kim, Dr. Sun has determined that Kim's injuries resulted in a permanent consequential limitation of use of Kim's left shoulder and lumbar spine and a significant limitation of use of Kim's left shoulder and lumbar spine, thus, meeting the requirements of two of the categories of "serious injury" identified in New York's no-fault insurance law. Therefore, the plaintiffs contend, Kim has offered evidence which, if credited, would establish a substantial loss of range of motion for a long period of time, and which, thus, gives rise to a genuine issue of material fact concerning whether he suffered a "serious injury," as contemplated by New York's no-fault insurance law.

According to the plaintiffs, Kim's affidavit, dated March 7, 2018, submitted in support of the plaintiffs' opposition to the instant motion, is consistent with the assessments made by Dr. Sun. For example, in his own affidavit, Kim avers that, although he still has pain from the January 19, 2014 automobile accident, he stopped treatment because his injuries are permanent and the treatment is palliative in nature. He also states that, due to the pain caused by the injuries he sustained in the automobile accident, he can no longer engage in the same types of activities he engaged in prior to the accident, such as lifting heavy objects.

14

Regarding Choi, Dr. Sun's submission is based on his own examination of Choi approximately three months after the accident, on April 28, 2014, and subsequently on January 8, 2018, as well as the results of the MRIs taken in 2014. Upon examination of Choi in 2014, Dr. Sun found that Choi indicated his major complaints developed as a result of the January 19, 2014 automobile accident, that the symptoms were getting progressively worse, and that he could not perform his daily activities because of pain and stiffness. Dr. Sun reports that he conducted a range of motion test and found positive results. Range of motion was restricted.

On January 8, 2018, in regard to the left shoulder, Dr. Sun found tenderness and restricted range of motion. The MRI taken in 2014, according to Dr. Sun, revealed joint effusion possibly due to trauma and focal intrasubstance tear involving the subscapularis tendon. Regarding the cervical spine, Dr. Sun conducted a range of motion test and found that Choi demonstrated tenderness at the cervical spine area and muscle spasm; range of motion was restricted. Review of the MRI of the cervical spine revealed reversal of the cervical lordosis possibly due to muscular spasm, central herniated discs at the L4/5 and L5/S1 levels and ventral bulging at the L3/4, L4/5 and L5/S1 levels. These findings were consistent with that which was revealed via the MRIs.

Based on his review of the relevant records, Dr. Sun opined that Choi's prognosis was guarded, and that he has a permanent partial orthopedic disability. Any medical treatment will be palliative in nature. The injuries sustained to the left shoulder and cervical spine were caused solely by the automobile accident of January 19, 2014, and not from degenerative diseases.

Dr. Sun concluded that Choi's injuries resulted in a permanent consequential limitation of use of Choi's left shoulder and cervical spine and a significant limitation of use of Choi's left

15

shoulder and cervical spine, thus, meeting the requirements of two of the categories of "serious injury" identified in New York's no fault insurance law. Therefore, the plaintiffs contend, Choi has offered evidence which, if credited, would establish a substantial loss of range of motion for a long period of time, and which, thus, gives rise to a genuine issue of material fact concerning whether he suffered a "serious injury," as contemplated by New York's no fault insurance law.

The plaintiffs maintain that Choi's affidavit, dated March 7, 2018, submitted in support of the plaintiffs' opposition to the instant motion, is consistent with the assessments made by Dr. Sun. For example, in his own affidavit, Choi avers that, although he still has pain from the January 19, 2014 automobile accident, he stopped treatment because his injuries are permanent and the treatment is palliative in nature. He also states that, due to the pain caused by the injuries he sustained in the automobile accident, he can no longer engage in the same types of activities he engaged in prior to the accident, for example, carrying items weighing over 20-30 pounds.

Regarding Ae Choi, Dr. Sun's submission is based on his own examination of Ae Choi three months after the accident, on April 28, 2014, and subsequently on January 8, 2018, as well as the results of the MRIs taken in 2014. Upon examination in 2014, Dr. Sun found, in regard to Ae Choi's left elbow, swelling and tenderness at the left elbow joint. The range of motion was restricted.

On January 8, 2018, in regard to Ae Choi's left elbow, Dr. Sun found swelling and tenderness at the left elbow joint and restricted range of motion. The MRI taken in 2014, according to Dr. Sun, revealed left elbow joint effusion and focal intrasubstance tear involving the biceps ligament. He states that the objective medical findings with respect to the left elbow in 2014 and 2018 were consistent with that which was revealed via the MRI.

16

Regarding the lumbar spine examination in 2014, Dr. Sun found tenderness at the lower back. The range of motion was restricted. Upon review of the MRI of the lumbar spine, Dr. Sun found reversal of the lumbar lordosis possibly due to muscle spasm and a central herniated disc at the L5/S1 level. Dr. Sun opined that, based on his review of the records, the prognosis for Ae Choi was guarded and that the injuries sustained to her left elbow and lumbar spine were caused solely by the automobile accident of January 19, 2014, and not degenerative disease(s). Dr. Sun opined that Ae Choi will likely have lifelong orthopedic problems and has a permanent partial orthopedic disability.

Dr. Sun avers that Ae Choi's injuries have resulted in a permanent consequential limitation of use of her left elbow and lumbar spine and a significant limitation of use of her left elbow and lumbar spine. Therefore, the plaintiffs contend, Ae Choi has offered evidence which, if credited, would establish a substantial loss of range of motion for a long period of time, and which, thus, gives rise to a genuine issue of material fact concerning whether she suffered a "serious injury," as defined in New York's no-fault insurance law.

The plaintiffs contend Ae Choi's affidavit, dated March 7, 2018, submitted in support of the plaintiffs' opposition to the instant motion, is consistent with the assessments made by Dr. Sun. For example, in her own affidavit, Ae Choi avers that, although she still has pain from the January 19, 2014 automobile accident, she stopped treatment because her injuries are permanent and the treatment is merely palliative in nature. She also states that, due to the pain caused by the injuries she sustained in the automobile accident, she can no longer engage in the same types of activities she engaged in prior to the accident, for example, lifting and carrying heavy objects;

17

also, it is difficult for her to stand for an extended period of time, such as when she is working at her restaurant.

Regarding Soon Kim, Dr. Sun's submission is based on his own examination of Soon Kim four months after the accident, on May 21, 2014, and subsequently on January 8, 2018. Upon examination in 2014, Dr. Sun found that Soon Kim's symptoms were getting progressively worse and she could not perform daily activities normally because of pain and stiffness. In regard to the lumbar spine, he found swelling and tenderness at the lower back and muscle spasm. The range of motion was restricted. The MRI taken in 2014, according to Dr. Sun, revealed L-spinal reversal of the lumbar lordosis, bulging of annulus fibrosis at the L4-5 level and ventral bulging at the L2-3 level anteriorly. The objective medical findings of the lumbar spine upon examination in 2014 and 2018 are consistent with that which was revealed via the MRI.

Regarding the cervical spine examination in 2014, Dr. Sun conducted a range of motion test and found that motion was restricted. Dr. Sun observed swelling and tenderness at the cervical spine area and muscle spasm. Upon review of the MRI of the cervical spine, Dr. Sun found C-spinal lordosis central herniated disc at the C6-7 level and ventral bulging of the C6-7 level anteriorly.

Dr. Sun opined that, based on his review of the records, the prognosis for Soon Kim was guarded and that the injuries sustained to her lumbar spine and cervical spine were caused solely by the automobile accident of January 19, 2014. Dr. Sun opined that Soon Kim will likely have lifelong orthopedic problems and has a permanent partial orthopedic disability.

18

Dr. Sun avers that Soon Kim's injuries have resulted in a permanent consequential limitation of use of her lumbar spine and cervical spine and a significant limitation of use of her lumbar spine and cervical spine. Therefore, the plaintiffs maintain that Soon Kim has offered evidence which, if credited, would establish a substantial loss of range of motion for a long period of time, and which, thus, gives rise to a genuine issue of material fact concerning whether she suffered a "serious injury," as defined in New York's no-fault insurance law.

The plaintiffs also maintain that Soon Kim's affidavit, dated March 7, 2018, submitted in support of the plaintiffs' opposition to the instant motion, is consistent with the assessments made by Dr. Sun. For example, in her own affidavit, Soon Kim avers that, although she still has pain from the January 19, 2014 automobile accident, she stopped treatment because the treatment she received was only palliative in nature. She also states that due to the injuries she sustained from the automobile accident, she can no longer engage in the same types of activities she used to engage in prior to the accident, such as being able to cook and prepare sauces at the kitchen in her restaurant; instead, she can only work as a cashier.

Based on the evidence presented, the plaintiffs contend that they have overcome the defendant's motion by demonstrating that each has sustained a serious injury within the meaning of New York's no-fault insurance law.

*III.  Applicable Law*

   *A. Summary Judgment Standard*

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; see Celotex Corp. v.

19

Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). "If the party moving for summary

judgment demonstrates the absence of any genuine issue as to all material facts, the nonmoving

party must, to defeat summary judgment, come forward with evidence that would be sufficient to

support a jury verdict in its favor." Burt Rigid Box, Inc. v. Travelers Property Cas. Corp., 302

F.3d 83, 91 (2d Cir. 2002). "The nonmoving party may not rely simply on conclusory statements

or on contentions that the affidavits supporting the motion are not credible." Id. (citation

omitted). On a motion for summary judgment, the court must view the evidence in the light most

favorable to the non-movant and draw all inferences in the non-movant's favor. See Sologub v.

City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

### B. New York Insurance Law

The Court's jurisdiction in this matter is based on diversity of citizenship; therefore, New

York's substantive law governs the action. See, e.g., Hanna v. Plumer, 380 U.S. 460, 465,

85 S. Ct. 1136, 1141 (1965). New York's no-fault insurance law restricts recovery for non-

economic injuries sustained in motor vehicle accidents such as the one at issue here. Specifically,

New York Insurance Law § 5104(a) provides:

> Notwithstanding any other law, in any action by or on behalf of a
> covered person against another covered person for personal injuries
> arising out of negligence in the use or operation of a motor vehicle
> in this state, there shall be no right of recovery for non-economic
> loss, except in the case of a serious injury or for basic economic
> loss.

N.Y. Ins. L. § 5104(a).

A "serious injury" under this statute is defined as:

> a personal injury which results in death; dismemberment;
> significant disfigurement; a fracture; loss of a fetus; permanent loss

20

of use of a body organ, member, function, or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.

N.Y. Ins. L. § 5102(d).

A major goal of the Legislature in enacting the no-fault insurance law was "to keep minor personal injury cases out of court." Licari v. Elliott, 57 N.Y.2d 230, 236, 455 N.Y.S.2d 570, 573 (1982). Whether a plaintiff has suffered a qualifying serious injury is a threshold inquiry properly decided at the summary judgment stage. See Licari, 57 N.Y.2d at 238, 455 N.Y.S.2d at 574. When moving for summary judgment in a case involving New York's no-fault insurance law and a claim for non-economic loss, the defendant has the initial burden to establish a prima facie case that the plaintiff has not sustained a serious injury as a matter of law. See Gaddy v. Eyler, 79 N.Y.2d 955, 956, 582 N.Y.S.2d 990, 991 (1992). "The defendant may satisfy this initial burden with unsworn reports by the plaintiff's physicians or with sworn affidavits or affirmations by the defendant's own retained physicians." See Thomas v. O'Brien, No. 08-CV-3250, No. 08-CV-3448, 2010 WL 785999, at *7 (E.D.N.Y. Feb. 26, 2010).

Once the defendant has met this initial burden, the burden shifts to the plaintiff to overcome the defendant's motion by demonstrating that he sustained a serious injury within the meaning of the no-fault insurance law. See Gaddy, 79 N.Y.2d at 957, 582 N.Y.S.2d at 991. In this regard, "a plaintiff must offer objective proof of an injury." Rivera v. United States, No. 10 Civ. 5767, 2012 WL 3132667, at *10 (S.D.N.Y. July 31, 2012). A "[p]laintiff must therefore

21

offer admissible evidence in the form of sworn affidavits or reports by physicians, or sworn medical test records, such as MRI reports. As long as the plaintiff adduces sufficient objective evidence from which a jury could find that she sustained a serious injury, summary judgment must be denied 'notwithstanding some contrary probative evidence.'" Id. (citations omitted). On the other hand, unsworn medical reports from physicians submitted by a plaintiff in opposition to a summary judgment motion are inadmissible evidence that may not be considered. See Robinson v. United States, No. 02 Civ. 5166, 2005 WL 747039, at *6 (S.D.N.Y. Mar. 31, 2005). Additionally, in order to recover for non-economic losses under New York's no-fault insurance law, a plaintiff not only has to prove he sustained a serious injury, he also must show that the injury was caused by the accident at issue. See Pommells v. Perez, 4 N.Y.3d 566, 574-575, 797 N.Y.S.2d 380, 385 (2005). Thus, "even where there is objective medical proof, when additional contributory factors interrupt the chain of causation between the accident and claimed injury– such as a gap in treatment, an intervening medical problem, or a preexisting condition – summary dismissal of the complaint may be appropriate." Id. at 572, 797 N.Y.S.2d at 383.

*IV.*   *Discussion*

### *A. Whether the Defendant Satisfied Her Initial Burden*

In this case, the defendant has met her initial burden by establishing a prima facie case that the plaintiffs have not sustained serious injuries, as a matter of law, through her submission of Dr. Zimmerman's affirmations, which state that the plaintiffs did not sustain permanent injuries and are not suffering from any disabilities. As outlined above, based on his examination of the plaintiffs and their treatment records, Dr. Zimmerman concluded that: (a) Kim did not sustain a permanent injury as a result of the January 19, 2014 automobile accident, his left

22

shoulder and lumbar conditions were resolved, and he had no neurologically related disability; (b) Choi did not sustain a permanent injury as a result of the January 19, 2014 automobile accident, his left shoulder and cervical spine conditions were resolved, and Choi had no neurologically related disability; (c) Ae Choi did not sustain a permanent injury as a result of the January 19, 2014 automobile accident, her lumbar spine and left elbow and arm conditions were resolved and she had no neurologically related disability; and (d) Soon Kim did not sustain a permanent injury as a result of the January 19, 2014 automobile accident, her lumbar spine and cervical spine conditions were resolved and she had no neurologically related disability.

Furthermore, at their respective depositions, neither Kim nor Choi admitted that he was told he would need surgery, a bone graft or a discectomy, did not claim to have suffered any dismemberment or become disfigured or sustain any fractures as a result of the January 19, 2014 automobile accident. Additionally, none of the plaintiffs established that he or she suffered an impairment that prevented him or her from "performing substantially all of the material acts" which constituted his or her "usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment." N.Y. Ins. L. § 5102(d). Thus, the plaintiffs' alleged limitations regarding their respective daily activities were insufficient to establish that each suffered a serious injury, as defined in New York's no-fault insurance law.

The defendants' submissions are, therefore, sufficient to make the necessary prima facie showing that none of the plaintiffs' injuries rises to the level of a "serious injury" within the meaning of New York Insurance Law § 5102(d). Therefore, the defendant has satisfied her

23

"serious injury" summary judgment burden and the burden shifts to the plaintiffs to: (1) demonstrate that each suffered a serious injury; and (2) establish causation.

### B. Whether the Plaintiffs Have Satisfied Their Burden

The plaintiffs must demonstrate, through admissible evidence, that a material issue of fact exists respecting whether each suffered a serious injury as a result of the automobile accident that occurred on January 19, 2014. As noted above, in support of their opposition to the defendant's motion for summary judgment, each plaintiff submitted deposition testimony and affidavits, as well as the "Physician's Affidavit[s]" of Dr. Sun. Each plaintiff claims that he or she has established the existence of a "serious injury" under two of the categories outlined in New York's no-fault insurance law: (a) permanent consequential limitation of use of a body organ or member; and (b) significant limitation of use of a body function or system.

To establish a permanent consequential limitation of the use of a body organ or member a plaintiff must "demonstrate more than a mild, minor or slight limitation of use." Booker v. Miller, 258 A.D.2d 783, 784, 685 N.Y.S.2d 837, 838 (App. Div. 3d Dep't 1999)(citations omitted). "Indeed, consequential limitation instead means an important and qualitative limitation of use of a body part based on normal function, purpose and use of that body part." Evans v. United States, 978 F. Supp.2d 148, 165 (E.D.N.Y. 2013) (citation omitted). "Similarly, with respect to the significant limitation of use of a body function or system category, the law also requires the limitation be more than minor, mild or slight and the claim must be supported by medical proof based upon credible medical evidence of an objectively measured and quantified medical injury or condition." Id. at 165-66 (citations and internal quotation marks omitted.)

The plaintiffs have met the evidentiary requirements associated with overcoming summary judgment in this case. The plaintiffs have offered admissible evidence in the form of statements under penalty of perjury by a physician and MRI reports interpreted by both the plaintiffs' and defendant's physician witnesses. As discussed above, with regard to each plaintiff, Dr. Sun determined, based on his review of MRIs and physical examinations he performed, that the injuries suffered during the January 19, 2014 automobile accident caused both a permanent consequential limitation of use of a body organ or member and a significant limitation of use of a body function or system, thus, meeting the requirements of two categories of "serious injury" noted in New York's no-fault insurance law. Therefore, each plaintiff has offered evidence which, if credited, would establish a substantial loss of range of motion for a long period of time and which, thus, gives rise to a genuine issue of material fact concerning whether he or she suffered a serious injury.

*V.     Conclusion*

Under the circumstances, it does not appear that the alleged limitations of the plaintiffs are so minor, mild or slight as to be considered insignificant within the meaning of New York Insurance Law § 5102(d). Dr. Sun's opinions are supported by objective medical evidence, including MRIs and reports, paired with his observations of the plaintiffs during their respective physical examinations. Considered in the light most favorable to the plaintiffs, this evidence is

25

sufficient to defeat the defendant's motion for summary judgment. Therefore, for the reasons set

forth above, the defendant's motion for summary judgment, Docket Entry No. 29, is denied.

Dated: New York, New York
        September 27, 2018

SO ORDERED:

_Kevin Nathaniel Fox_

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE